NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAR 12 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a Connecticut corporation, <br><br> Plaintiff-Appellee, <br><br> v. <br><br> LIBERTY SURPLUS INSURANCE CORPORATION, a Massachusetts corporation, <br><br> Defendant-Appellant. | No.   18-15956 <br><br> D.C. No. <br> 2:16-cv-02752-WBS-EFB <br><br><br> MEMORANDUM* |

Appeal from the United States District Court
for the Eastern District of California
William B. Shubb, District Judge, Presiding

Argued and Submitted December 6, 2019
San Francisco, California

Before:  SILER,** BYBEE, and R. NELSON, Circuit Judges.

Liberty Surplus Insurance Company appeals the district court's grant of

summary judgment to Travelers Property Casualty Insurance Company of America

---

*     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

**     The Honorable Eugene E. Siler, United States Circuit Judge for the
U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

on the issue of equitable contribution. We affirm.

Travelers and Liberty issued consecutive general liability policies to subcontractor Dura Art, Inc. Dura was named as a cross-defendant in a construction defect suit. But, when the cross-complaint was filed, Dura was unable to participate in the litigation because Dura's corporate status had been suspended under Cal. Rev. & Tax. Code § 23301 and Cal. Corp. Code § 2205. *See Palm Valley Homeowners Ass'n, Inc. v. Design MTC*, 102 Cal. Rptr. 2d 350, 354-55 (Cal. Ct. App. 2000). This presented a problem for Dura's insurers because in California an insurer may be liable to a judgment creditor who obtains a default judgment against a suspended corporate insured. *See* Cal. Ins. Code § 11580(b)(2).

The parties addressed this legal quandary in different ways. Travelers intervened in the underlying suit in its own name pursuant to Cal. Civ. Proc. Code § 387 and reached a settlement. Liberty chose not to intervene. Subsequently, Travelers initiated this lawsuit seeking a declaration that Liberty had a duty to defend and indemnify Dura and requesting equitable apportionment of fees and costs. The district court agreed and granted summary judgment in favor of Travelers.

We review the district court's grant of summary judgment de novo. *Protect Our Cmtys. Found. v. LaCounte*, 939 F.3d 1029, 1034 (9th Cir. 2019). In a diversity action like this one, the substantive law of the forum state applies, and we review the district court's interpretation of California law de novo. *See Conestoga Servs.*

*Corp. v. Exec. Risk Indem., Inc.*, 312 F.3d 976, 980-81 (9th Cir. 2002).

We must consider two related questions.  First, does California law permit an insurance company to intervene to defend a suspended corporate insured?  And, if so, did Liberty have a legal obligation to defend and indemnify Dura in the underlying suit?

First, California law permits an insurer to intervene in a lawsuit in its own name to defend a suspended corporate insured.  California law imposes criminal liability on "[a]ny person who attempts or purports to exercise the powers, rights, and privileges of a corporation that has been suspended pursuant to Section 23301." Cal. Rev. & Tax. Code § 19719(a).  But the statute contains an important exception:

> *This section shall not apply to any insurer*, or to counsel retained by an insurer on behalf of the suspended corporation, *who provides a defense for a suspended corporation in a civil action* based upon a claim for personal injury, property damage, or economic losses against the suspended corporation, and, in conjunction with this defense, prosecutes subrogation, contribution, or indemnity rights against persons or entities in the name of the suspended corporation.

*Id.* § 19719(b) (emphasis added).  Indeed, the statute expressly says that "[n]othing in this section shall create *or limit* any obligation upon an insurer to defend a suspended corporation." *Id.* § 19719(c) (emphasis added).  Thus, the plain text of the statute exempts insurers who provide a defense for a suspended corporation.

Plus, the California Court of Appeal has stated that "[s]ubdivision (b) of section 19719 *allows an insurance company to provide a defense for a suspended*

*corporation* in certain actions and, in connection with this defense, prosecute subrogation, contribution or indemnity rights in the name of the suspended corporation." *Kaufman & Broad Cmtys., Inc. v. Performance Plastering, Inc.*, 39 Cal. Rptr. 3d 33, 38 (Cal. Ct. App. 2006) (emphasis added). Liberty points to language in *Kaufman & Broad* that suggests an insurer may not defend the interests of a suspended insured. *See id.* at 38-39. Even so, when reading the decision comprehensively, *Kaufman & Broad* seems to interpret section 19719(b) to allow an insurance company to intervene as an interested party in litigation to defend a suspended corporate insured so long as the insurer intervenes in the lawsuit in its own name. *See id.* at 36-38; *see also El Escorial Owners' Ass'n v. DLC Plastering, Inc.*, 65 Cal. Rptr. 3d 524, 534-35 (Cal. Ct. App. 2007) (noting that section 19719(b) created "an exception for insurers" and citing *Kaufman & Broad* for the proposition that an insurance company "may defend [a suspended insured] in its own name, but not in the name of the suspended corporation").

Moreover, Dura's simultaneous suspension under Cal. Corp. Code § 2205 did not prevent Travelers from intervening to defend Dura. Of course, like Cal. Rev. & Tax. Code § 23301, § 2205 provides for suspension of "corporate powers, rights, and privileges," which include the ability to participate in litigation activities. Cal. Corp. Code § 2205(c). And, unlike Cal. Rev. & Tax. Code § 19719(b), § 2205 contains no express exception allowing insurers to intervene on behalf of a

suspended insured.

Even so, § 2205 contains no provision that imposes criminal liability on a person or entity that attempts to intervene in a lawsuit on behalf of a suspended corporation. In fact, the statute is silent on whether an insurer may intervene in litigation to defend a suspended corporate insured. Additionally, we are aware of no case that expressly prohibits an insurance company from intervening in a lawsuit to protect an insured suspended under Cal. Corp. Code § 2205. True, in one case the California Court of Appeal upheld the imposition of sanctions on a law firm that participated in discovery and filed motions on behalf of a client that it knew to be suspended under § 2205. *See Palm Valley Homeowners Ass'n*, 102 Cal. Rptr. 2d at 352-56. But *Palm Valley* did not address the issue of an insurance company's intervention in a lawsuit in its own name to defend a suspended corporation. Elsewhere, the California courts have noted that an insurer's obligation to defend its insured continues even if the insured is suspended. *See El Escorial*, 65 Cal. Rptr. 3d at 535 (noting that Cal. Rev. & Tax. Code § 19719 was amended to "protect[] insurers that are obligated to defend suspended corporations"); *Garamendi v. Golden Eagle Ins. Co.*, 10 Cal. Rptr. 3d 724, 740 (Cal. Ct. App. 2004) (noting that, when an insured is suspended, "[t]he insurer not only ha[s] a right to participate in and to control the litigation, it ha[s] a duty to do so"). In light of this authority, we conclude that Cal. Corp. Code § 2205 does not bar an insurer from

intervening in a lawsuit in its own name to defend a suspended corporation.

Moreover, Liberty's contention that Travelers may have been able to intervene to defend its own interests but that it could not intervene in the lawsuit to defend Dura's interests presents a distinction without a difference. An insurance company's legal interest—assuming there are no defenses to coverage—is inextricably tied to the potential liability of its insured for a covered loss within the policy limits. As such, when Travelers intervened in the construction defect suit to defend its own interests, it was also defending or seeking to limit Dura's liability in the underlying construction defect suit.

Second, having determined that California law permits an insurer to intervene in its own name to defend a suspended corporate insured, we must address whether Liberty owes equitable contribution to Travelers. In California, a right to equitable contribution arises when two or more insurance companies owe a duty to defend or indemnify the same insured. *See, e.g.*, *Fireman's Fund Ins. Co. v. Md. Cas. Co.*, 77 Cal. Rptr. 2d 296, 303-04 (Cal. Ct. App. 1998).

Liberty contends that even if it was *permitted* to intervene it does not owe a duty to defend or indemnify. Thus, Liberty argues, because it was not *required* to intervene in the underlying suit, it owed no duty to the insured. However, Liberty's duties are defined by the provisions in its insurance policy. And here, Liberty's insurance policy stated, "We will pay those sums that the insured becomes legally

obligated to pay as damages of 'bodily injury' or 'property damage' to which this insurance applies. *We will have the right and duty to defend the insured* against any 'suit' seeking those damages." (emphasis added).

Moreover, in California, "any provision that takes away or limits coverage reasonably expected by an insured must be conspicuous, plain and clear." *Haynes v. Farmers Ins. Exch.*, 89 P.3d 381, 385 (Cal. 2004) (internal quotation marks omitted). Here, there is no language in the policy that limits or extinguishes Liberty's coverage obligation in the event of Dura's suspension.

In sum, Liberty owed a duty to defend and indemnify Dura based on the provisions in its insurance policy. The policy expressly imposed a duty upon Liberty to defend and indemnify Dura for property damage to which the policy applied. Liberty refused to defend Dura in the underlying suit even though neither California law nor the insurance policy excused Liberty's obligation to defend Dura. As a result, Liberty had a duty to defend and indemnify Dura in the underlying construction defect suit and owes equitable contribution to Travelers.

Third, Travelers's decision to settle poses no bar to its recovery of equitable contribution. California law permits a settling coinsurer to recover equitable contribution from a nonparticipating coinsurer if the participating coinsurer demonstrates a potential for coverage. *See Safeco Ins. Co. of Am. v. Superior Court*, 44 Cal. Rptr. 3d 841, 844 (Cal. Ct. App. 2006). To demonstrate a potential for

18-15956

coverage, a participating coinsurer need only make a prima facie showing of potential liability triggering a duty to defend. *Id.* Here, a potential for coverage has been shown since the provisions in Liberty's insurance policy impose an express duty to defend and indemnify Dura.

Finally, Liberty concedes that the no voluntary payments clause in the policy will only preclude a suit to recover on a settlement if Liberty did not previously breach the duty to defend. *See* Appellant's Pr. Brief at 31-32. Based on the foregoing, Liberty was permitted by California law to intervene in the underlying suit and failed to intervene even though Liberty had a duty to defend and indemnify based on the plain language of the insurance policy. As a result, the no voluntary payments clause has no effect on Travelers's ability to recover equitable contribution.

In conclusion, Liberty owed a duty to defend and indemnify Dura based on the provisions in its insurance policy. Dura's suspended corporate status did not modify or excuse Liberty's duty to defend. Thus, Liberty owes equitable contribution for Travelers's defense of Dura in the underlying construction defect suit.

**AFFIRMED**.